## MATTER OF SOUZA

### In Visa Petition Proceedings

### A–18550615

*Decided by Regional Commissioner January 3, 1972*

Where the visa petition to accord beneficiary nonimmigrant classification under section 101(a)(15)(K) of the Immigration and Nationality Act, as amended, as the alien fiancee of the U.S. citizen petitioner, was filed between the date beneficiary obtained a *decree nisi* in divorce proceedings against her first husband and the date that decree became final, the visa petition is denied since beneficiary's divorce was not absolute and was open to legal challenge until the latter date; further, instructions on Form I—129F, which, pursuant to 8 CFR 103.2, are incorporated into the regulations, require that both the petitioner and beneficiary must be unmarried at the time the petition is filed.

IN BEHALF OF PETITIONER: Martin T. Camacho, Esquire
31 State Street
Boston, Massachusetts 02109

This matter is before the Regional Commissioner on appeal from the denial of the petition to accord the beneficiary nonimmigrant classification as the fiancee of a United States citizen under section 101(a)(15)(K) of the Immigration and Nationality Act, as amended.

The beneficiary is a 23-year-old Portuguese citizen, born in the Azores, who was admitted to the United States on August 25, 1969 as a temporary visitor for pleasure until December 21, 1969. She was married on November 27, 1969 to Ronald Souza, a 32-year-old native-born United States citizen, who filed an immediate relative petition in her behalf on December 22, 1969. The petition was approved by this Service on December 30, 1969 and, on February 2, 1970, the alien applied for permanent residence. Her husband subsequently withdrew his petition on August 8, 1970, stating that his wife has refused to live with him and had gone to reside with relatives. The beneficiary's application for adjustment was thereafter denied August 24, 1970 on the ground that an immigrant visa number was not immediately available to her, and she was given until September 8, 1970 to depart from the United States. Her failure to leave resulted in the institution of deportation

1

proceedings on February 5, 1971. On May 4, 1971, she was granted the privilege of voluntary departure, with an alternate order of deportation being entered in the event she failed to leave when and as required.

The record in this matter further discloses that the beneficiary subsequently initiated annulment proceedings against her husband based on allegations of fraud, misrepresentation, and nonconsummation of the marriage. The action was dismissed on June 25, 1971 inasmuch as the allegation of fraud had not been sustained.

A libel for divorce was thereafter filed in behalf of the alien in the Bristol County Probate Court, Bristol, Massachusetts and was heard on September 14, 1971. A *decree nisi* was entered in her favor that date on the ground of cruel and abusive treatment, the decree to become absolute upon the expiration of six months. The alien subsequently departed from the United States on October 9, 1971. The instant petition was filed in her behalf on November 10, 1971 by Michael J. Flint, a 20-year-old native-born United States citizen. The District Director denied this petition on the ground that the beneficiary is not unmarried and, therefore, is not free to conclude a valid marriage within ninety days after entry into the United States.

In connection with the appeal from the District Director's decision, oral argument was heard at Burlington, Vermont on December 17, 1971. It has been stated by counsel that the statute merely requires the petitioner and beneficiary be free to conclude a valid marriage within ninety days after the alien's admission; that, in the instant case, the petitioner requests the issuance of a nonimmigrant visa as of January 14, 1972, which will be exactly four months after the *decree nisi* was entered in the beneficiary's favor; that if she is admitted to this country subsequent to January 14, 1972, she will be free to marry on or after March 14, 1972 when the decree becomes absolute; that such marriage will be contracted within thirty days thereafter, thus complying with the ninety-day period specified in the statute; that in the unlikely event the divorce does not become final and the marriage cannot occur, the law will require the alien to depart from the United States. It has been asserted that since the beneficiary was the one who brought the divorce action and the 21-day appeal time has run out for her former husband, the chances are practically nil that the *decree nisi* will be set aside. Counsel has further stated that the petitioner and beneficiary have met and seen each other; that, to the best of his knowledge, they became acquainted after the divorce action was initiated and knew each other for approxi-

mately two months prior to the filing of the petition; that they are about the same age and very sincere in their desire to marry.

The entire record in this case has been very carefully reviewed in the light of the representations made on appeal. Section 214(d) of the Act, as amended, provides in part:

A visa shall not be issued under the provisions of section 101(a)(15)(K) until the consular officer has received a petition filed in the United States by the fiancee or fiance of the applying alien and approved by the Attorney General. The petition shall be in such form and contain such information as the Attorney General shall, by regulation, prescribe. It shall be approved only after satisfactory evidence is submitted by the petitioner to establish that the parties have a *bona fide* intention to marry and *are legally able and actually willing to conclude a valid marriage in the United States within a period of ninety days after the alien's arrival*. In the event the marriage with the petitioner does not occur within three months after the entry of the said alien and minor children, they shall be required to depart from the United States and upon failure to do so shall be deported in accordance with sections 242 and 243. . . . (Emphasis supplied.)

In the matter at hand, the divorce *decree nisi* dated September 14, 1971 states that "upon and after the expiration of six months from the entry of this decree it shall become and be absolute unless, upon the application of any person interested within such period, the Court shall otherwise order." Despite counsel's insistence that the chances are extremely remote that the decree will be set aside, the fact remains that the divorce could be challenged legally within the six-month period and, if set aside, the alien would not be free to marry. Moreover, the statute contemplates that the peitioner and beneficiary be free to marry during all, and not merely part, of the ninety-day period following the alien's admission to the United States. This position is supported by the instructions in Form I–129F which states in pertinent part:

1. Eligibility. *A petition may be filed only by an unmarried citizen* of the United States to classify the status of the alien beneficiary as a nonimmigrant fiancee or fiance who seeks to enter the United States solely to conclude a valid marriage with the petitioner within ninety days after entry into the United States. *The beneficiary must also be unmarried and free to validly marry the petitioner.* (Emphasis supplied.)

In accordance with the above instructions, both the petitioner and the beneficiary must be unmarried and free to validly marry at the time the petition is filed. It is provided in 8 CFR 103.2 that the instructions on applications, petitions and other documents on prescribed forms are incorporated into the particular section of the regulations requiring their submission. Under the circumstances the instant beneficiary, whose divorce is not yet final, does not meet the regulatory requirement for classification as the fiancee of a United States citizen. Accordingly, this appeal will be dismissed.

*IT IS ORDERED* that the appeal be and same is hereby dismissed.

3